## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

State Farm Fire
and Casualty Co.

v.

Michael J. Madden et al.

March 7, 1991

Case No. (Chancery) 7057

By JUDGE JAY T. SWETT

This matter is before the court on plaintiff's request for declaratory relief. A hearing was held on January 18, 1991. Evidence was taken without a jury. Counsel were afforded an opportunity to submit legal briefs. At the hearing, defendant Brenda Jones appeared *pro se*. However, Michael J. Johnson, Esq., has entered an appearance on behalf of Ms. Jones and submitted a memorandum in support of her position. After considering the evidence taken at the hearing as well as your argument and authorities, the following are my findings and rulings.

The evidence demonstrated that the underlying facts necessary to resolve the dispute are essentially uncontroverted. Brenda V. Jones was hired in January of 1989 by defendant Legal Education, Ltd. Ms. Jones was hired to operate a personal computer principally involving desktop publishing and general word processing. At the time Legal Education, Ltd., was managed by Mr. and Mrs. Ed Good. There was one other employee, also a computer operator. Ms. Jones reported to Mr. and Mrs. Good. The business operated in a retail store in Barracks Road Shopping Center in Charlottesville.

The events that give rise to this suit occurred on or about April 26, 1989. Ms. Jones was typing a paper for defendant Michael J. Madden. Apparently, Mr. Madden had delivered his paper to be typed at the store earlier that day. In the course of typing the paper, Ms. Jones became suspicious that Mr. Madden had plagiarized all or a portion of the paper. Assuming that Mr. Madden was a University of Virginia student, Ms. Jones telephoned a member of the University of Virginia Honor Committee. She testified that when she did so, she at first was going to inquire whether the Honor Committee involved itself in such matters. Apparently, during the course of the conversation, she then related the information and her suspicions to the member of the Honor Committee, including the identity of Mr. Madden. She testified that she believed once she made the telephone call that she "would be out of it."

When asked why she made the call without discussing the matter first with either Mr. or Mrs. Good, Ms. Jones testified that although Mrs. Good was available, Ms. Jones did not think that Mr. and Mrs. Good needed to be bothered or involved. In fact, Ms. Jones testified that when she spoke with the Honor Committee, she indicated that she did not want Legal Education, Ltd., or the Goods to become involved and, if it or they had to become involved, she did not want the matter to go further.

Ms. Jones never mentioned the call to Mr. or Mrs. Good. Mrs. Good learned of it the next day from the other employee who was present when Ms. Jones made the call. When confronted by Mrs. Good, Ms. Jones admitted to having made the call and explained that she had been concerned about the possibility of cheating. The other employee, Ms. Sandy Williams, essentially confirmed Ms. Jones's version. Ms. Williams stated that at the time of the call, Ms. Jones said that she (Ms. Jones) did not believe that the Goods needed to be involved.

It turned out that Mr. Madden was not a University of Virginia student. When he learned of the charge of plagiarism, he filed a suit for defamation against Legal Education, Ltd., and Brenda Jones. Legal Education, Ltd., is insured by the plaintiff in this action, State Farm Fire and Casualty Co. State Farm has brought this declaratory action seeking a declaration that Ms. Jones is not

an insured under the policy and that it owes no duty to defend Brenda Jones in the defamation action for the reason that Ms. Jones is not a covered employee under the policy. More specifically, State Farm requests the court to construe paragraph 6 of section 2 of the policy issued to Legal Education, Ltd., where it defines "insured" as follows:

> 6. *Insured* means each of the following to the extent set forth below . . . .
>     d. Any employee of the *Named Insured* while acting within the scope of their duties as such . . . .

At the conclusion of the January 18, 1991, hearing, I asked counsel to consider whether the definition of "Named Insured" under the policy should be analyzed using the traditional test of employee/employer that arises in tort cases involving the doctrine of *respondeat superior*. While there is no direct authority answering this question, this court is not persuaded that the test should be the same. While not specifically addressing the point, the traditional test for "scope of employment" under *respondeat superior* was applied in an insurance coverage case, *Com. Union Ins. Co. v. St. Paul Fire*, 211 Va. 373, 376 (1970).

In viewing the evidence as a whole, it is my conclusion that the actions of Ms. Jones in telephoning the University of Virginia Honor Committee were actions that exceeded the scope of her duties as an employee of Legal Education, Ltd. This factual finding is made, in part, on Ms. Jones's own testimony. While her concern over the possibility of plagiarism is understandable, she initiated the telephone call to the University of Virginia Honor Committee not only without raising the matter first with Mr. and Mrs. Good, but, in doing so did not intend to involve the Goods or advise them that the call had been made. One can only conclude that her decision not to bother or involve her employer was based on the fact that she was concerned about the possible ramifications to her employer of such a call. This supports my conclusion that Ms. Jones was motivated by her individual concern over the possibility of cheating. It is difficult to see how the telephone call, while it may have disclosed an incidence of plagia-

rism, furthered her employer's interests or was made in the performance of her employer's business.

Ms. Jones cites the court to *Slaughter v. Valleydale Packers, Inc.*, 198 Va. 339 (1956). In that case, our Supreme Court defined "scope of employment" relying on *Meacham on Agency*, (2d Ed.) Section 1960. Mr. Johnson argues that if there is doubt in this case, then the doubt should be resolved in favor that the act was within the scope of employment. However, that was a jury case in which the issue of scope of employment was submitted to a jury which returned a verdict indicating that the actions of the defendant were outside the scope of his employment. Here, I sit as the fact finder. In that role, I conclude that Ms. Jones does not come within the definition of an employee of the named insured acting within the scope of her duties.